Teck Hobbs, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Henry Hobbs, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 27351, 27352. Promulgated June 3, 1932.

*Harry C. Weeks, Esq.*, for the petitioners.
*F. R. Shearer, Esq.*, for the respondent.

OPINION.

BLACK: No deficiencies were determined against Henry Hobbs for the years 1919 and 1921, nor against Mrs. Hobbs for 1921, but overassessments were determined for those respective years and it follows that the proceedings for 1919 and 1921 as to Henry Hobbs, and for 1921 as to Mrs. Hobbs, should be and are hereby dismissed for lack of jurisdiction. *Cornelius Cotton Mills*, 4 B. T. A. 255.

On the hearing and upon final submission counsel for petitioners moved to dismiss the proceeding as to Mrs. Hobbs for the year

1919, upon the ground that the Board has no jurisdiction because the deficiency notice did not determine a deficiency against her for said year. The facts with reference to this phase of the proceeding have been stated in the findings of fact.

Petitioners' contention is based on section 273, Act of 1926, which defines " deficiency " as " the amount by which the tax imposed by this title exceeds the amount shown as the tax by the taxpayer upon his return; but the amount so shown on the return shall first be increased by the amounts previously assessed (or collected without assessment) as a deficiency, and decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax." Petitioner contends that the use of Mrs. Hobbs' deficiency to reduce Henry Hobbs' overassessment is a collection without assessment and that when this is added to the tax shown on her return there is no deficiency. We think petitioner overlooks the word " previously " as used in the section. The act provides that when the deficiency is determined there shall be added to the amount shown on the return amounts previously assessed or previously collected without assessment. In making his determination here, the respondent followed the act as we interpret it. At the time of determining the deficiency there had been no previous collection of the amount involved therein with or without assessment and there was nothing to add to the tax shown on the return on this account. Moreover, the evidence shows that, notwithstanding the language used in the deficiency notice, there has never been any use of the overassessment determined in favor of Henry Hobbs in settlement of the deficiency determined against Mrs. Hobbs. In these circumstances we hold that respondent determined a deficiency and Mrs. Hobbs appealed from that determination to this Board, which is sufficient to give the Board jurisdiction. Cf. *Austin Co.*, 8 B. T. A. 628; *Uncasville Mfg. Co.* v. *Commissioner*, 55 Fed. (2d) 893.

Petitioners' next contention is that the transfer by Hobbs and associates of their oil properties to the Hobbs Oil Company, a joint stock association, was a taxable transaction completed in 1919, and that the value of that stock so received in 1919, rather than the cost of the properties so exchanged for said stock, is the proper basis for determining the profit on the sale of the Hobbs Oil Company stock in 1920 to C. N. Haskell and associates.

In determining the gain of petitioners in the Haskell transaction, the respondent took as his basis the cost of the property which petitioners conveyed to the Hobbs Oil Company, while it is contended by petitioners that the proper basis was the fair market value of the Hobbs Oil Company stock on the date of its issue, December 15, 1919; that said stock was worth more on that day than they received for it; and that a loss was sustained rather than a gain.

We do not agree to this contention. The organization of the Hobbs Oil Company and the transfer to it of the lands and leases was merely a part of one main transaction, which was to sell certain oil lands and interests in oil lands which were specified in the contract, plus 75 per cent of the stock in the Texas Chief Oil & Gas Company, for a consideration of $2,100,000 cash and $600,000 capital stock of the Delaware Company. The fact that to perform the contract the organization of a common law trust or association was resorted to as a means to carry through the deal, does not alter the character of the transaction. There was no intention on the part of Hobbs or his associates to effect an exchange of their oil lands for stock in the Hobbs Oil Company, but their intention was to make a sale of their lands to Haskell and the Delaware Company by which they were to receive a large part of the agreed purchase price in cash and the balance in stock of the Delaware Company. All the shares of stock of the Hobbs Oil Company were issued to Hobbs and by him immediately sent to New York for delivery to the Delaware Company to be held by it as a part of its own property. No owner of the oil lands and leases conveyed to the Hobbs Oil Company had any beneficial interest in or power of disposition over the stock, as it belonged to the Delaware Company as soon as issued. The interest of the owners of the oil lands and leases conveyed to Hobbs Oil Company was in the consideration which they were to receive under the main contract and supplements thereto. We hold that the respondent was correct in fixing, as the basis for the calculation of gain, the cost of the oil properties to petitioners. *Commissioner* v. *Moore*, 48 Fed. (2d) 526; certiorari denied, 284 U. S. 620; *Commissioner* v. *Garber*, 50 Fed. (2d) 588.

Petitioners' next contention is that $800,000 of the notes received in 1920 in connection with the Haskell transaction and secured by a lien on the Hobbs Oil Company properties should be valued at not more than $300,000 for the purpose of fixing the profits on the Hobbs-Haskell transaction. Notwithstanding the testimony of some witnesses at the hearing that the fair market value of these notes was considerably less than their face value, we do not think petitioners have overcome the prima facie correctness of respondent's determination that the notes were worth their face value. We think on this point it is sufficient to say that the notes were the unconditional promises to pay. They were negotiable and $650,000 of these notes were paid during 1920 and $150,000 early in January, 1921, and the nonnegotiable note for $100,000, which is not in controversy, was settled some years later. We have had the respondent's valuation of these notes before us once before in *W. Oscar Williams*, 16 B. T. A. 109, and we there sustained the respondent, and that case was affirmed

in *Williams* v. *Commissioner*, 45 Fed. (2d) 61. There is no substantial difference, we think, in the evidence in the instant case from that which we had before us in *W. Oscar Williams*, *supra*, and respondent's action is approved.

Petitioners' next contention is that they should be taxed with only so much of the commissions in the Haskell transaction as Hobbs received in 1920. Respondent included $23,820.13 as the amount which petitioners received in 1920 on account of these commissions. There has been no adequate evidence to rebut the correctness of the determination of the Commissioner on this point and accordingly we approve this determination.

Petitioners further contend that the 500 shares of Texas Chief Oil & Gas Company stock transferred by Henry Hobbs to his wife in 1919 constituted a gift and made that stock her separate property; that the basis for determining taxable profit on the subsequent sale of these shares of stock was their value at the date of gift; and that no part of the proceeds of sale can be considered as taxable income to Henry Hobbs. The facts with reference to this transaction have been fully stated in our findings of fact and need not be repeated here. We think they evidence a gift from Hobbs to his wife of his interest in these 500 shares of stock. And the gift took place before there was ever any talk of a sale of such shares to C. N. Haskell and associates. The shares of stock were community property of which Mrs. Hobbs was already the owner of 250 shares. As to these 250 shares, the gain will be the difference between their cost, of $2,500 and their sale price of $20,000, amounting to $17,500. The basis for the other 250 shares is their market value at the date of the gift, which we found to be $25,000. None of the profit resulting from the sale of these particular 500 shares of stock in Texas Chief Oil & Gas Company was income to Henry Hobbs, because he had parted with his title to them before the sale took place.

Petitioner presents an assignment of error to the effect that the 5,000 shares of stock in the Delaware Corporation obtained from Haskell in 1920, as the result of a telegram sent Haskell by attorney Britain and Henry Hobbs, constituted a gift and is not taxable; that the stock was never received by Hobbs, but went to his wife as her separate property and, if taxable at all, it is taxable to her and it should not be valued at more than $5 per share. We think the evidence shows that the payment of these shares of stock was in the nature of compensation for services performed or to be performed and was not intended as a gift. *Arthur L. Lougee*, 26 B. T. A. 23. Cf. *Roy A. Meagent* v. *Bowers*, decided by the Circuit Court of Appeals, Second Circuit, April 11, 1932. These shares of stock were first income to the community estate, even though Hobbs, after

Haskell had notified him that the 5,000 shares would be transferred to him, gave his interest in them to his wife and the shares were actually issued to her. *Lucas* v. *Earl*, 281 U. S. 111.

Petitioners' next contention is that the sale of the Emmerich property in 1919 constituted a closed transaction taxable in that year; that the deferred payment of $300,000 to be made in oil was readily marketable and should be valued at its market value on that date, and that this value, with .appropriate adjustments for collection thereon, constitutes the proper basis to determine profit or loss on the subsequent resale in 1920. The facts relating to this transaction are stated in our findings of fact.

No negotiable paper was executed and the $300,000 of deferred payment was payable only on the contingency that the oil was produced. We think the facts in the instant case with reference to the Emmerich Oil Company transaction are very similar to those in *Commissioner* v. *Garber, supra.*

In that case Garber and his associates had received $2,500,000 in oil certificates from Sinclair Oil Company, payable $500,000 each year. The certificates were nonnegotiable. Garber made his income-tax returns on the cash receipts and disbursements basis just as petitioners have done in the instant case. He returned his part of the $500,000 due each year, if and when it was received, but after the statute of limitation had tolled, he sought to treat the whole transaction as complete in 1918 and contended that all of it was taxable in that year. This the court refused to allow, saying:

Counsel for the respondent [petitioner below] cite a number of cases holding that where property is exchanged for negotiable paper or other property that can be readily liquidated, the profit is realized and taxable. No claim, however, is made that the Sinclair agreement was a negotiable instrument.

Indeed, the Sinclair transaction was hedged about with conditions, not only as to *time* of performance, but as to *certainty* of performance.

*       *       *       *       *       *       *

The facts and the law in the instant case are identical with those in *Commissioner of Internal Revenue* v. *M. C. Garber* and related cases, decided by the Tenth United States Circuit Court of Appeals on March 14, 1931, 48 F. (2d) 526. The respondents in that case were the associates of the respondent in the present suit. In that case, the court, holding, as we do, that the trilateral transaction whereby the taxpayers sold their Garfield oil stock for $500,000 cash and $2,500,000 in deferred payments, gave rise to no income in 1918 save as to the cash payment, said: [The court here quotes from the opinion of the Tenth Circuit.]

*With this holding we are in entire accord. Such a view is based upon sound public policy as well as upon written law. It makes income taxable when it is received by the citizen. It precludes the possibility of a sudden change of theory after the statute of limitations has run. It does mathematical justice between government and taxpayer.* [Italics supplied.]

There is no evidence which shows that either of the petitioners returned any profits from the Emmerich Oil Company transaction on their 1919 income-tax returns, which was the year in which they now claim the transaction was completed and taxable.

Respondent, in computing income from this transaction in 1920, allowed full return of capital to petitioners before taxing any of the cash received in that year as income. In view of the evidence, we think the action of the respondent relative to this transaction was correct, and it is approved. Cf. *Burnet* v. *Logan*, 283 U. S. 404.

Petitioners lay much stress on the fact that there was evidence that the contract with the Emmerich Oil Company, calling for future payments of $300,000 out of oil, had a fair market value at the date of the transaction of $200,000. But that is not conclusive.

As said by the court in *Bedell* v. *Commissioner*, 30 Fed. (2d) 622 (affirming the Board in *Alfred M. Bedell*, 9 B. T. A. 270):

Of course, it is true that an obligation, even a conditional obligation, is in some sense property, and, like anything else that can be transferred, may be said to have a value, but nevertheless payment is made in exchange for title, and will never be made if it is not conveyed. *To speak of the profit as resulting because its amount can be presently ascertained, though performance remains uncertain, seems to us a perversion of language.* [Italics supplied.]

The remaining issue is as to the tolling of the statute of limitations. No question is raised as to the validity of any of the waivers, except the one signed by A. E. Myles as attorney in fact for Mrs. Hobbs. This was dated December 1, 1926, and referred to the years 1919, 1920 and 1921, and by its terms extended the limitation period to December 31, 1927.

The deficiency letter was mailed to Mrs. Hobbs on February 24, 1927, and was in time, if the waiver is valid. A. E. Myles was a tax accountant and had charge of income-tax matters for the petitioners for the years in question, under a written power of attorney which was filed with the Bureau of Internal Revenue and is copied in our findings of fact. Petitioners contend that the waiver is invalid because under the power of attorney Myles was not authorized to sign the waiver because (1) the power was joint to represent both petitioners and he was not authorized to represent one, (2) his authority was to represent petitioners only in the " determination and adjustment " of tax liability, and this does not authorize signing a waiver, and (3) there is no specific authority given to sign waivers.

We hold that Myles had authority to sign the waiver. The general rule is that every general power implies every particular power necessary to its exercise or performance. Undoubtedly the object

256

of the employment of Myles and the power of attorney given him was to put the determination and adjustment of petitioners' taxes for 1919 and subsequent years in Myles' charge and he was clothed with any and all power necessary to accomplish that purpose successfully. He was expressly authorized "to enter into any and all such agreements, compromises and settlements" and "to sign our names to any or all such agreements, compromises and settlements." The waiver was an agreement, or consent in writing, in furtherance of negotiations with reference to petitioners' tax liability for the years covered by the power of attorney. One of its objects was to prevent an arbitrary jeopardy assessment and obtain time for a calm deliberative consideration of the questions involved.

We think it was incidental to the general power to adjust and settle the taxes that Myles had the right to sign the waiver and that it was valid. *E. M. Pringle Naval Stores Co.*, 23 B. T. A. 1327; *Joff* v. *Commissioner*, 45 Fed. (2d) 679. It follows that limitation has not barred the deficiencies asserted herein, nor the collection of the unpaid balances on taxes for 1920 against either or both petitioners.

*Decision will be entered under Rule 50.*